disagree with this enumeration for two reasons. First, during the actual trial of the case, the trial court made a statement for the record that Tatum had waived the presence of the court reporter for the first day of voir dire. Tatum did not object to this statement, and has therefore waived his right to raise this issue on appeal. Further, Tatum merely objects to the failure to record the voir dire; he does not allege that any harm resulted from that omission. For this reason we find no reversible error. *Smith v. State*, 251 Ga. 229, 230 (2) (304 SE2d 716) (1983); *Marshall v. State*, 239 Ga. 101, 103 (2) (236 SE2d 58) (1977).

4. In his final enumeration of error Tatum contends that the trial court erred in permitting Dr. Burton to testify concerning hangfire. Tatum contends that the subject of hangfire was outside the field of Dr. Burton's expertise. Pretermitting the question whether Dr. Burton was an expert in the field of firearms,[3] the record shows that Tatum did not object to Dr. Burton's testimony on the ground that it was beyond his field of expertise. Tatum therefore has waived his right to raise this issue on appeal. *Williams v. State*, 255 Ga. 97, 100 (4) (335 SE2d 553) (1985).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 22, 1989.

*Ralph W. Kearns, Jr.,* for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys, Michael J. Bowers, Attorney General, Eddie Snelling, Jr., Assistant Attorney General,* for appellee.

## 46331. BOWMAN v. THE STATE.
(380 SE2d 255)

BELL, Justice.

The appellant, Archie Neal Bowman, was convicted and sentenced to life imprisonment for malice murder. He appeals, and we affirm.[1]

---

[3] The record shows that Dr. Burton testified that he had studied ballistics and had performed several thousand ballistics examinations.

[1] The crime occurred on August 19, 1987. On December 17, 1987, Bowman was indicted for malice murder, felony murder, and aggravated assault. On January 29, 1988, a jury returned a verdict of guilty of malice murder and not guilty of the remaining counts. Bowman moved for a new trial on February 19, 1988. On April 25, 1988, the court reporter certified the transcripts of proceedings to that date, and on July 26, 1988, Brown amended his motion for new trial. The motion was heard on July 28, 1988, and the trial court denied the motion on August 12, 1988. On August 16, 1988, Bowman filed a notice of appeal, which he amended

1. Taken most favorably to the state, the evidence presented at trial showed that on the evening of August 19, 1987, Bowman and two companions drove to an apartment complex to attempt to purchase drugs. Once there they picked up the victim, apparently to go elsewhere to get drugs, and one of Bowman's companions then beat the victim on the head with the butt of a pistol. Bowman and his companions thereafter searched the victim's pockets, drove their vehicle to various locations (during at least part of this period the victim was still breathing and was making noises), and eventually dumped the victim near some railroad tracks. The victim was found dead from his head wounds the next morning.

We hold that there was sufficient evidence to meet the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. After he was taken into custody, the appellant signed a police-department form in which he consented to permit the police to take specimens of hair from his head. On appeal he contends that the trial court erred in admitting the form into evidence over his objection that the police did not contact his counsel before they sought his consent.

However, the objection to introducing the form was not meritorious.

> It is clear . . . that Miranda protects only testimonial evidence [cit.], and not non-compulsive physical evidence [cit.]. Since [the appellant] could not have refused to provide the hair samples, the absence of his attorney could not have been prejudicial. [Cits.]

*Tiller v. State*, 238 Ga. 67, 68 (230 SE2d 874) (1976).

3. The trial court did not err by refusing the appellant's requests to instruct the jury on self-defense, concealing the death of another person, and involuntary manslaughter.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 22, 1989.

*Ralph W. Kearns, Jr.*, for appellant.
*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys, Michael J. Bowers, Attorney*

on September 1, 1988. The court reporter certified the transcript of the July 28 hearing on October 4, 1988. The clerk of the trial court certified the record on October 10, 1988. The appeal was docketed in the Court of Appeals on October 13, 1988, was ordered transferred to this court on October 21, 1988, and was docketed here on October 26, 1988. On December 9, 1988, the appeal was submitted for decision on briefs.

*General, Andrew S. Ree,* for appellee.

46418. THE STUART-JAMES COMPANY, INC. v. TANNER et al.
(380 SE2d 257)

HUNT, Justice.

We granted The Stuart-James Company, Inc.'s application to appeal the ruling of the superior court affirming the decision of the Department of Labor that it is not exempt from unemployment taxes under the provisions of the Georgia Unemployment Security Act. OCGA Ch. 34-8.

Stuart-James is an investment banking and stock brokerage company, whose salespersons are essentially independent contractors who are compensated, not by salary, but by a share of the commission earned by Stuart-James on the sale of securities.[1]

When the Department of Labor attempted to assess unemployment taxes against it, Stuart-James sought to establish an exemption under OCGA § 34-8-40 (g) of the act, which exempts services performed by an individual for wages which meet the so-called "A, B, C" test. This test refers to the three conditions of employment which must be met in order to qualify for the exemption under this code section. See *Sarah Coventry, Inc. v. Caldwell,* 243 Ga. 429 (254 SE2d 375) (1979). After a hearing, the Department of Labor hearing officer found Stuart-James did not qualify for this exemption, is an "employer" under the act, and is liable for contributions to the Georgia unemployment fund. Because employers of insurance agents and solicitors and real estate agents are specifically exempt from this tax, OCGA § 34-8-40 (o) (11),[2] Stuart-James, on appeal to the superior court, challenged the constitutionality of the act on equal protection grounds. The Fulton Superior Court affirmed the hearing officer's denial of the exemption and held the act constitutional. Stuart-James appeals, challenging only the trial court's ruling that the act does not deny equal protection in exempting independent salespersons such as real estate agents and insurance agents and solicitors, while not exempting securities salespersons. For the reasons given below, we af-

---

[1] Under the federal unemployment law, common law principles of employer-employee and independent contractor are applied to decide whether the company is an "employer" subject to the act's provisions. The Georgia Act does not exempt all independent contractors and commissions are considered "wages" subject to the act. *Sarah Coventry, Inc. v. Caldwell,* 243 Ga. 429 (254 SE2d 375) (1979).

[2] See also OCGA § 34-8-51 (b)(3), exempting commissions paid to real estate salespersons by a broker from the statutory definition of "wages."